IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LINDA BECKEL, | 8:04CV275 |
| Plaintiff, | |
| vs. | MEMORANDUM AND ORDER |
| SOCIAL SECURITY ADMINISTRATION, Jo Anne B. Barnhart, Commissioner | |
| Defendant. | |

## INTRODUCTION

The plaintiff's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* ("Act"), was denied initially and on reconsideration. After a hearing, an administrative law judge ("ALJ") determined on July 22, 2003, the plaintiff not to be disabled under the Act. The Appeals Council of the Social Security Administration refused the plaintiff's request for review on April 29, 2004. The plaintiff now seeks judicial review of the ALJ's determination since it represents the final decision of the defendant, the Commissioner of the Social Security Administration.

The plaintiff claims that the ALJ's decision is incorrect for several reasons: 1) the ALJ deprived plaintiff of her right to present evidence and be examined by her representative; 2) the ALJ did not establish sufficient evidence to support the decision that the plaintiff is able to return to her past work as a cutter and sewer of awnings; 3) the ALJ failed to discuss the opinion of plaintiff's treating physician, Dr. Rodney Quinn; 4) the ALJ gave too much weight to the opinion of the one-time examiner and ignored the opinion of the treating physician, Dr. Rodney Quinn; and 5) the ALJ failed to follow the *Polaski*

standard in evaluating the plaintiff's subjective complaints of pain.[1]  I now have reviewed the record, the ALJ's evaluation and findings, the parties' briefs, the transcript ("Tr."), and the applicable law.  I conclude the case should be remanded with instructions that the ALJ reopen the hearing and permit further testimony and evidence in this case.

## BACKGROUND

The claimant testified she was 39 years old, 5'4½" tall, weighed 195 pounds and right-hand dominant at the time of the hearing.  Tr. at 300.  She has a tenth grade education and is able to read and write.  Tr. at 69.  She stated she lives with two friends and does her own laundry, dishes and some cooking.  Tr. at 301.  She also drives twice a week for personal business, such as grocery shopping and doctor appointments.  Tr. at 302.  The ALJ questioned her about her work history and she testified she worked at Hardee's, Braum's Restaurant, and Pizza Hut.  Tr. at 307.  Claimant has been diagnosed with epilepsy.  She testified that every time she wrote epilepsy on a job application she would not get hired.  Tr. at 312.  She stated she had trouble remembering things because she once received a beating with a 2 x 4.  Tr. at 320.  She has been seeing Dr. Rodney Quinn, M.D., for anxiety and seizures since 1998.  Tr. at 310.

Dr. Quinn examined plaintiff on April 4, 2001.  Tr. at 126.  Plaintiff reported that she felt tired from working hard and she suffered from a seizure that "lasted seconds."  Tr. at 126.  The doctor instructed plaintiff to call if she had a seizure, continue with her seizure medication, not to drive for six months and return in a year.  Tr. at 127.  On August 4, 2001, plaintiff went to the emergency room claiming she had suffered a 15-minute seizure.

---

[1] Because the court concludes that the ALJ failed to provide an adequate hearing for the claimant, the court will not address any of the remaining allegations of error.

Tr. at 157. She stated that she had run out of seizure medication four days earlier and she could not afford it. Tr. at 157.

James A. Markusic, Ph.D., a consulting doctor who saw claimant pursuant to a reference by Green County Division of Family Services, examined the plaintiff on September 21, 2001. Tr. at 255-59. Dr. Markusic performed a personality inventory and a mental status examination on the claimant. Tr. at 255. Claimant reported to Markusic that she does dishes, laundry, vacuuming and ordinary customary activities within the household. Tr. at 257. Claimant stated she is capable of working and is looking for work. Tr. at 257. Dr. Markusic noted that the plaintiff appeared pleasant and cooperative, with a bright affect, and easily established rapport. Tr. at 258. He also noted that because of her unexpected seizures, she appears to be significantly fearful of what may occur. Tr. at 258. Dr. Markusic's opinion is that her intellectual capacity is within the "Low Average" range of functioning. Tr. at 259.

On September 13, 2002, Dr. Quinn completed a mental residual functional capacity examination for the plaintiff. Tr. at 211-12. He opined she appeared "moderately" limited in most areas of functioning, such as her ability to carry out very short and simple instructions. Tr. at 211. Dr. Quinn also noted she appeared "extremely" limited in her ability to be aware of normal hazzards and take appropriate precautions. Tr. at 212. He stated that the plaintiff is "not significantly" limited in her ability to interact appropriately with the general public and her ability to ask simple questions or request assistance. Tr. at 212.

A physician from the Springfield Clinic,[2] treated the claimant on December 19, 2002,

---

[2]This physician's name is not legible. Tr. at 252-253.

3

and completed a mental residual functional capacity assessment for the claimant. Tr. at 252-53. The physician stated the plaintiff did not appear "extremely" limited in any areas and also "not significantly" limited in her ability to be aware of normal hazards and take appropriate cautions. Tr. at 253

Plaintiff's hearing went before the ALJ on January 9, 2003. Tr. at 297. The ALJ questioned plaintiff about her age, daily activities, current living conditions, income, work history and education. Tr. at 300-313. Plaintiff also discussed her impairments and stated that she never suffered a seizure at work. Tr. at 312. She further stated that she had a bad memory because of a beating she received twenty years ago. Tr. at 320. However, she could not explain why she had not filled out forms for Social Security, nor why she did not tell Social Security that she wished to allege she had difficulty with memory. Tr. at 320. The ALJ adjourned the hearing and decided to continue after the plaintiff's examination by a consultative psychologist, Dr. Paul Iles, Psy.D. Tr. at 321.

On January 24, 2003, Dr. Iles conducted a mental status examination and completed a medical source statement for the claimant. He diagnosed plaintiff with depression, anxiety and personality disorder. Tr. at 260-71. He stated that claimant's ability to perform work-related functions does not appear to be significantly impaired. "Claimant is able to sustain concentration and persistence with simple and non-complex tasks." Tr. at 268. He also stated that claimant appears to have minimal mathematical skills and poor judgement skills and would benefit from someone else managing her finances. Tr. at 268. He noted claimant appears able to interact socially and adapt to her environment appropriately. Tr. at 268.

The ALJ gave written questions to the vocational expert. Tr. at 123-124. The ALJ asked the vocational expert to assume a hypothetical individual of the claimant's age who has past work experience as a fast food worker, and has worked for six months cutting the material for, and making awnings in an awning manufacturing company. Tr. at 124. The ALJ also asked the vocational expert to assume the hypothetical individual has a tenth grade education, can read and write, and is right-hand dominant. Tr. at 124. In addition, the ALJ further assumed the individual has the maximum mental residual functional capacity to understand and remember simple redundant instructions, sustain concentration and persistence with simple, non-complex tasks, and who is able to appropriately interact socially and adapt to her environment. Tr. at 124. Based on this analysis, the vocational expert stated the hypothetical individual could return to previous work as generally required in the national economy. Tr. at 124.

## ALJ's DECISION

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (D)(1)(A); 20 C.F.R. § 404.1505. A claimant is considered to be disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantially gainful work which exists in [significant numbers in] the national economy. . . ." 42 U.S.C. § 432 (D)(2)(A).

The ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

Using this analysis, the ALJ concluded that the plaintiff is not disabled within the meaning of the Social Security Act. Tr. at 23. The ALJ found that the plaintiff had not engaged in substantially gainful activity since her alleged onset date, July 15, 2001. Tr. at 19. The ALJ further found that the combination of the following impairments is severe under the Act and regulations: epilepsy; depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified; and personality disorder, not otherwise specified, with borderline and antisocial traits. Tr. at 19. The ALJ determined that the claimant's severe combination of impairments does not meet or equal the severity of any listing. Tr. at 21.

The ALJ also determined that the claimant's allegation of a complete inability to work is not credible. Tr. at 22. She told Dr. Iles she is independent with regard to her self-care, in that she is able to perform her own bathing, toileting, hygiene, dressing and feeding herself. Tr. at 22. Dr. Iles noted that her communication skills appear to be intact, and that she is able to read, write, use the telephone, handle mail, and handle money. Tr.

at 22. She lives in a home with two other people and does her own homemaking, grocery shopping, meal preparation, and bill paying. Tr. at 22. She also told Dr. Iles that she likes to do crafts, likes to camp, and likes photography. Tr. at 22. After consideration of the entire record, the ALJ found the claimant has the residual functional capacity to frequently lift and/or carry up to 25 pounds; occasionally lift and/or carry up to 50 pounds; stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. Tr. at 22. The ALJ determined that given the claimant's residual functional capacity, the claimant can perform her past relevant work, as that work is generally performed in the national economy. Tr. at 22.

## LEGAL STANDARD

When reviewing the decision not to award disability benefits, the district court does not act as a fact finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (*citing Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)). In determining whether the evidence in the record is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision either "because substantial evidence exists in the record that would have supported a contrary outcome,

or because [the court] would have decided the case differently." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citations omitted). The court may, however, "reverse the administrative determination on the ground of unreasonableness." *Bradley v. Bowen*, 660 F. Supp. 276, 279 (W.D. Ark. 1987) (*citing Gavin v. Heckler*, 811 F.2d 1195, 1199-1201 (8th Cir. 1987), *and Deuter v. Schweiker*, 568 F. Supp. 1414 (N.D. Ill. 1983)).

## DISCUSSION

### Right to a Second Hearing

The ALJ found "that the claimant does not meet the statutory criteria for a finding of disability in that scenario, and is therefore not entitled to a period of disability or DIB, and is not eligible for Social Security benefits." Tr. at 22. The plaintiff contends the finding is in error because the ALJ deprived plaintiff of her right to present evidence and be examined by her representative. The ALJ conducted the hearing on January 9, 2003. The ALJ stopped the hearing when he decided the claimant needed to be examined by a clinical psychologist. Tr. at 321. The ALJ stated: "All right, then I'll go ahead with what I was going to do. We'll stop the hearing now. I will ask the DDS to offer you a psychological evaluation and I'll have your hearing set then as quickly as I can." Tr. at 323. The ALJ obtained the psychological evaluation, but he never reconvened the claimant's hearing. The ALJ relied on the contents of the post-hearing psychological examination for details about the claimant's daily activities and jobs. After receiving the assessment from the psychologist indicating the claimant retained the ability to perform "simple, non-complex" tasks, the ALJ issued a decision without scheduling a hearing or taking further testimony. Claimant argues that the rules providing the conduct of the hearing require the claimant the opportunity to present evidence and testify.

The court agrees with the claimant in this case that the procedure used by the ALJ prohibited her from having a fair opportunity to present her case and to allow counsel to examine and cross-examine witnesses.  "At the hearing you may appear in person or by video teleconferencing, submit new evidence, examine the evidence used in making the determination or decision under review, and present and question witnesses."  20 C.F.R. § 404.929; see also 20 C.F.R. § 404.950 (a) (right to appear and present evidence) and (e) (right of parties to ask questions of witnesses).  Due process requires "that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits can be denied.  *Stoner v. Secretary of Health and Human Services*, 837 F.2d 759, 760 (6tn Cir. 1988).  These opportunities were not afforded the claimant.  Accordingly, this case shall be remanded for further proceedings consistent with this opinion.

DATED this 30th day of August, 2005.

                                      BY THE COURT:

                                      s/Joseph F. Bataillon
                                      JOSEPH F. BATAILLON
                                      UNITED STATES DISTRICT JUDGE